STATE OF NORTH CAROLINA v. JACKIE RAND ROBINETTE

No. 7822SC788

(Filed 6 February 1979)

1. **Homicide § 21.1— solicitation to commit murder—sufficiency of evidence**

   The State's evidence was sufficient for the jury in a prosecution for solicitation to commit murder where it tended to show that defendant told an SBI informant that he wished to kill an officer who had made a drug buy from defendant for which defendant was arrested and that he might need help, defendant acquiesced in the informant's suggestion to seek help from another who was in fact an SBI agent, and defendant stated to the SBI agent that he wanted the officer killed and agreed to pay the price set by the SBI agent for the killing, notwithstanding defendant never paid the $1,000 down payment agreed upon for the killing.

2. **Criminal Law § 88.3— cross-examination—collateral matter—State bound by defendant's answers—other evidence admitted without objection not substantially the same**

   In a prosecution for solicitation to commit murder in which defendant denied on cross-examination that he had killed "the Green boys" up in Caldwell County or that he had told a witness that he committed those killings, the trial court erred in permitting the witness to testify on rebuttal for impeachment purposes that defendant had told him that he had killed "the Green boys," since defendant's testimony on cross-examination related to a collateral matter, and the State was therefore bound by defendant's answers and could not introduce evidence to contradict them. Nor was such testimony rendered harmless by the admission without objection of testimony that defendant had told another witness that he had been involved "in something like this before," since that testimony was not substantially the same as the testimony concerning the killing of "the Green boys."

APPEAL by defendant from *Collier, Judge.* Judgment entered 17 May 1978 in Superior Court, IREDELL County. Heard in the Court of Appeals 5 December 1978.

Defendant was indicted for soliciting SBI Special Agent Furr to murder Jimmie Morris, a police officer assigned to undercover drug investigation. The State presented evidence that on 15 December 1977 Morris made a drug buy from defendant, for which defendant was arrested. James Marshall Self, an SBI informant, testified that on 15 January 1978 defendant said to him that he was going to kill Morris and Bobby Wagoner. Self told the defendant he might be able to take care of the problem for him, and two days later he set up a meeting between defendant and

Furr, who was known to defendant as "David Warren." At the meeting the possibility of killing Morris and the price were discussed. Defendant was arrested ten days later; during that time he had not offered "Warren" the $1,000 downpayment that had been agreed upon or contacted him any further about the matter. During part of that time defendant was in the hospital as the result of a car wreck.

The defendant testified that he knew the people involved and that he had gone to the meeting with "Warren" at Self's suggestion, but that it was "Warren" who suggested killing Morris and defendant disagreed. He had been suspicious all along that "Warren" and Self were SBI agents, and went to the meeting just to confirm his suspicions.

The defendant was found guilty and sentenced to 10 years. He appeals.

*Attorney General Edmisten, by Assistant Attorney General Patricia B. Hodulik, for the State.*

*Homesley, Jones, Gaines and Dixon, by Edmund L. Gaines, for defendant appellant.*

ARNOLD, Judge.

Defendant urges this Court to hold that his motion to dismiss should have been granted because there was insufficient evidence, taken in the light most favorable to the State, of solicitation to submit to the jury. He argues that the evidence discloses that any counseling, enticing or inducing of another to commit a crime, the gravamen of the offense of soliciting, *State v. Furr*, 292 N.C. 711, 235 S.E. 2d 193, *cert. den.* 434 U.S. 924 (1977), was done by the State's agent, Vance Furr.

[1] Looking at the evidence in the light most favorable to the State, we find the record reveals that defendant indicated to Self that he needed some help to kill Bobby Wagoner and Jimmie Morris. Self indicated that he and Furr might be able to help, and that he, Self, would contact Furr the following morning.

On the following morning, about 6:45 a.m., Self went to the house where defendant was staying. The two of them, and a third person, went to a telephone booth where Self called Furr and set

up an appointment for defendant and Furr to meet at 1:00 p.m. that day.

Furr and defendant met at the designated time and place. According to Agent Furr the defendant told him that defendant had been "popped" by "a cop or a rat" to whom defendant had sold drugs, and that he did not intend to go to prison.

Defendant at first indicated to Furr that "I may need to have [Wagoner and Morris] killed." Defendant then indicated to Furr that he wanted "this Jimmie Morris character, who I think is an SBI agent from Monroe or somewhere in that area, killed." Furr then asked defendant, "You don't want anyone killed except the Morris fellow?" Defendant replied, "Yes." Furr then indicated that it would cost defendant $3,000 and that he would require "$1000.00 down." Defendant replied "[t]hat's cool," but he wanted "ten days or the first of the month to raise the money." Furr then reminded defendant, "Remember, it will take $1000. down." Three days after this conversation a warrant was issued for defendant's arrest, and defendant was arrested approximately two weeks following this conversation with Agent Furr. Furr indicated that the police had waited an extra week to arrest defendant because defendant had been hospitalized as a result of an automobile wreck.

The evidence presents a reasonable inference that defendant had more than an interest in the possibility of killing Jimmie Morris. He indicated to Self that he wished to kill Morris and that he might need help, and he acquiesced in Self's suggestion to seek help from Furr. Defendant stated to Furr that he wanted Jimmie Morris killed and agreed to pay the price set by Furr. This is sufficient evidence from which a jury might find that defendant solicited Furr to kill Morris. Denial of defendant's motion for nonsuit was not error.

Defendant's position that Furr merely made a proposal which was never accepted because defendant never paid the $1,000 downpayment is untenable. While it is true that nothing was to be done unless defendant paid $1,000, this was a condition imposed by Furr, the solicitee. The solicitation already had been made by defendant. It may easily be inferred that defendant would have paid Furr the $1,000 immediately if he had had the money. The request by defendant for Furr to kill Morris complet-

ed the crime of solicitation regardless of whether defendant could come up with the requested downpayment.

[2]   Error is also assigned by defendant to the admission of certain rebuttal testimony. On cross-examination, defendant had testified: "No, I did not on May 31, 1976 kill Edward and A. C. Green up in Caldwell County. No, on June 1, 1976 I did not kill A. C. Green. I deny doing that. . . . No, I never told this man right there that I killed the Green boys." On rebuttal, the State recalled Marshall Self and asked him "what, if anything, the defendant Jackie Robinette told you about killing or murdering the Green boys." Defense counsel objected; the judge then instructed the jury that the testimony was admissible only for purposes of impeachment as a prior inconsistent statement. Asked, "What did he tell you about having to do about the killing of the Green boys?" Self then testified: "I said, 'Jackie, I know you can't get us any trouble, because I know you killed the Green boys.' He said, 'Yes, I did. I am going to tell you why. The sons-of-bitches ripped me off for nine pounds of heroin with a street value of $300,000.00 . . . .' "

We find no merit in the State's contention that this rebuttal evidence was properly admitted. "It is a general rule of evidence in North Carolina 'that answers made by a witness to collateral questions on cross-examination are conclusive, and that the party who draws out such answers will not be permitted to contradict them . . . .' " *State v. Long*, 280 N.C. 633, 639, 187 S.E. 2d 47, 50 (1972). The test for distinguishing material from collateral matters is "whether the evidence . . . would be admissible if tendered for some purpose other than mere contradiction; or in the case of prior inconsistent statements, whether evidence of the facts stated would be so admissible." *Id.* at 640, 187 S.E. 2d at 51. Evidence about a purported killing of the "Green boys" had no relevance to the charge for which defendant was being tried, and would not have been admissible as part of the State's case-in-chief. No extrinsic evidence of this collateral matter should have been admitted.

The State contends, however, that even if the testimony were improperly admitted, no prejudicial error resulted from its admission. This argument is based on Furr's testimony, without objection, as follows: "Then I asked him, 'I understand you have

been involved in something like this before.' Mr. Robinette replied, 'Yes.' . . . 'I have got to be very careful about what I say about the other thing I did, because a buddy of mine got busted by hiring some SBI agents to kill another person.' " The State contends that this testimony was substantially the same as the evidence concerning the killing of the "Green boys." We disagree.

It is well-established that where evidence is admitted over objection but substantially the same evidence is admitted without objection, the benefit of the objection is lost. *E.g. State v. Wills*, 293 N.C. 546, 240 S.E. 2d 328 (1977); *State v. Grace*, 287 N.C. 243, 213 S.E. 2d 717 (1975); *State v. Jenerett*, 281 N.C. 81, 187 S.E. 2d 735 (1972). However, the evidence admitted here without objection is not "substantially the same" as the challenged testimony. There is no indication that the conversation with Furr about a previous killing referred to the deaths of the "Green boys."

A final assignment of error brought forth by defendant relates to the cross-examination of defendant about his use of heroin in Vietnam. The district attorney then asked defendant, "Did you ever frag the officers?" ("Frag" is the term used to describe the purported practice in Vietnam of enlisted men throwing hand grenades at their own officers.) Since defendant is to be given a new trial for the improper admission of prejudicial evidence, and since the district attorney is not likely to ask such an improper question at a new trial, we see no necessity to discuss defendant's contentions concerning this assignment of error.

New trial.

Judges VAUGHN and MARTIN (Robert M.) concur.