STATE OF NORTH CAROLINA v. ROBERT FULTON KELLY, JR.

No. 933SC676

(Filed 2 May 1995)

## 1. Constitutional Law § 248 (NCI4th)— sexual abuse case— file of medical and therapy notes—failure to conduct in camera review—due process

In a prosecution of defendant for sexual abuse of children in a day care center, the trial court erred in refusing defendant's request to conduct an *in camera* review of files of medical and therapy notes on the children involved in order to determine if any material evidence existed in the files where a pretrial order had been entered in accordance with *Pennsylvania v. Ritchie,* 480 U.S. 39, directing the State to file and present to the trial court for *in camera* review medical, psychotherapeutic and DSS files with respect to the children listed in the indictments and any other day care children about whom the State would offer evidence, and this order was affirmed by the North Carolina Supreme Court.

**Am Jur 2d, Criminal Law § 774.**

## 2. Evidence and Witnesses § 2068 (NCI4th)— sexual abuse case—opinion testimony of parents—admission prejudicial error

In a prosecution of defendant for sexual abuse of children in a day care center, the trial court erred in allowing into evidence improper lay opinion testimony of the testifying children's parents about child abuse and particular behaviors resulting from that abuse, the motives, intentions and opinions of the children, that the children were not fantasizing or making up abuse allegations, the opinions of others, and that the children knew more than they said, since explanations of the symptoms and characteristics of sexually abused children are admissible only through expert testimony for the limited purpose of assisting the jury in understanding the behavior patterns of abused children, and evidence of a particular child's symptoms and their consistency with established characteristics of abused children can come in only through an expert.

**Am Jur 2d, Criminal Law § 774.**

3. **Evidence and Witnesses § 2594 (NCI4th)— sexual abuse case—former attorney testifying against defendant—reference to attorney-client relationship—error**

In a prosecution of defendant for sexual abuse of children in a day care center, the trial court erred in allowing defendant's former attorney, who withdrew as counsel after his son was named as a potential victim, to refer to his former attorney-client relationship with defendant, since the minimal probative value of the testimony was clearly outweighed by its prejudicial impact. Furthermore, the attorney's statements that "I've never been so shattered" and "I had believed in his innocence" had no probative value and were improperly admitted.

**Am Jur 2d, Witnesses §§ 97 et seq.**

Appeal by defendant from judgments entered 23 April 1992 by Judge D. Marsh McLelland in Pitt County Superior Court. Heard in the Court of Appeals 9 January 1995.

In 1988 defendant and his wife were operating a day care center. Defendant assisted with remodelling the day care and occasionally filled in for teachers over lunch breaks. Allegations of sexual abuse at the day care arose in January 1989. Beginning 18 January 1989 and continuing over the next several months, the Department of Social Services (DSS) and Officer Brenda Toppin, a former police department dispatcher and investigator of sexual abuse cases, interviewed children named as sexual abuse victims and the day care employees. Officer Toppin's investigation consisted, in part, of additional interviews with children and parents. She instructed the parents to keep a diary of disclosures and other relevant facts for use at trial and suggested that many of the children see one of four therapists. There is disagreement over whether or not these people were actually therapists, but for convenience we refer to them as therapists throughout this opinion. Ultimately twenty-nine children were the subject of indictments returned against defendant, and at least twenty-five additional people had been accused of sexual abuse.

The State's evidence consisted primarily of the testimony of parents, teachers, and relatives who corroborated the children and described behavioral changes. Only twelve of the indictment children testified. The therapists did not testify.

Following a nine month trial, defendant was convicted of ninety-nine charges, including first degree sexual offense, first degree rape,

STATE v. KELLY

[118 N.C. App. 589 (1995)]

taking indecent liberties, and crime against nature. He was found not guilty of one charge of crime against nature. The trial judge sentenced defendant to twelve consecutive life sentences. Defendant appeals.

*Attorney General Michael F. Easley, by Assistant Attorney General Ellen B. Scouten and Associate Attorney General Nancy B. Lamb, for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender Mark D. Montgomery, for defendant appellant.*

ARNOLD, Chief Judge.

### PRETRIAL DISCOVERY

[1] Defendant contends, in his first assignment of error, that information of material benefit to his defense was unconstitutionally withheld. Because credibility of the witnesses was crucial in this trial, as it is in most alleged child sexual abuse cases, defendant wanted direct access to, or an inspection by the trial court of any recorded information, whether written or otherwise, taken by the therapists who interviewed the children.

This assignment of error originates from a pretrial discovery motion entitled "Motion for Order to Produce Information Essential for Adequate and Competent Preparation of Defendants' Case for Trial," which was filed on behalf of all defendants named in the day care cases. Generally, the motion requested production of all information relating to medical, psychiatric, psychological, counselling, and treatment data collected and used with respect to each of the children named in the indictments, as well as any child or children whom the State intended to call either in rebuttal to defense evidence, or evidence they intended to offer pursuant to N.C. Gen. Stat. § 8C-1, Rule 404(b) (1988).

After a hearing on the motion, Judge L. Bradford Tillery, a pretrial judge, issued an order that directed the State to file and present to the court for *in camera* review, identifying information, medical and psychotherapeutic files, and DSS files with respect to the children listed in the indictments (hereinafter "indictment children"). The order also directed the State to prepare orders requesting all such information, including notes, reports and recordings, in the possession of third parties to be turned over to the trial court for *in camera* review. Furthermore, Judge Tillery's order instructed the State to prepare

similar orders with respect to children not named in the indictments (hereinafter "non-indictment children") upon the State's determination to offer evidence regarding those children. The North Carolina Supreme Court affirmed Judge Tillery's pretrial order insofar as it ordered the State to produce for *in camera* inspection the materials the State had in its possession; however, the Court vacated the portions of the order purporting to require the State to obtain from third parties, other than law enforcement agencies, the materials described in the order.

Before trial, in apparent compliance with Judge Tillery's order as affirmed by the Supreme Court, the State turned over a box of files to the trial court, Judge McLelland presiding. The box contained, *inter alia,* complete medical notes and therapy notes on the twenty-nine indictment children, twelve of whom testified at defendant's trial and seventeen of whom did not. The trial court refused to review the contents of the box either before trial or during trial except for one file on a non-testifying indictment child, which the court reviewed *in camera* during trial at the specific request of defense counsel and determined that no material evidence existed to warrant giving the file to the defense.

After trial, defendant's appellate counsel went to the Office of the Clerk of Court for Pitt County to view the exhibits. He opened several boxes containing trial exhibits, none of which were sealed. One of the boxes counsel opened contained twenty-nine files labeled with the names of the indictment children. Appellate counsel reviewed some of the documents contained in the files before requesting the box to be sealed and transmitted to the Court of Appeals for appellate review. Defendant argues that the files contained undisclosed information that would have been material to the defense.

Judge Tillery's pretrial order, as affirmed by our Supreme Court, was consistent with the United States Supreme Court holding in *Pennsylvania v. Ritchie,* 480 U.S. 39, 94 L. Ed. 2d 40 (1987). In *Ritchie,* the United States Supreme Court held that a defendant accused of sexual abuse of a child has a right under the Due Process Clause of the Fourteenth Amendment to have confidential records of a child abuse agency turned over to the trial court for *in camera* review and release of material information. *Ritchie,* 480 U.S. 39, 94 L. Ed. 2d 40. Before his trial, defendant Ritchie served a Pennsylvania social service agency (CYS) with a subpoena seeking access to records concerning his daughter, the alleged victim of the sexual

abuse charges brought against him. CYS acknowledged the existence of such records but refused to produce them, claiming that the records were privileged under Pennsylvania law. Ritchie argued that the records might contain the names of persons who could possibly be favorable witnesses at trial. He also specifically requested a medical report, which he believed CYS compiled during the investigation. The trial court refused to order CYS to disclose the files. At trial, Ritchie's daughter was the main witness against him. Despite a thorough cross-examination, attempting to rebut her testimony and attack her reasons for not reporting the incidents sooner, Ritchie was convicted. *Id.*

A plurality of the United States Supreme Court held that the Confrontation Clause was not violated by withholding the CYS file, and further refused to analyze the case under a Compulsory Process Clause analysis. Rather, the Court determined that Ritchie's claims were more properly considered under the Due Process Clause of the Federal Constitution. The *Ritchie* Court acknowledged the rules set forth in *Brady v. Maryland,* 373 U.S. 83, 10 L. Ed. 2d 215 (1963) and its progeny concerning the State's obligation to turn over to the defense favorable and material information in its possession; however, it noted that neither the prosecution, the defendant nor the trial court had seen the information in the CYS file. Moreover, the information sought by defendant was privileged, with the exception that the agency may disclose the information to a " 'court of competent jurisdiction pursuant to a court order.' " *Id.* at 44, 94 L. Ed. 2d at 49 (quoting Pa. Stat. Ann., Title 11, § 2215(a)(5) (Purdon Supp. 1986)). Therefore, the Court attempted to balance the public's interest in keeping sensitive information confidential, versus the accused's right to a fair trial, by fashioning a remedy in the nature of an *in camera* review of the records by the trial court. It held

> Ritchie is entitled to have the CYS file reviewed by the trial court to determine whether it contains information that probably would have changed the outcome of his trial. If it does, he must be given a new trial. If the records maintained by CYS contain no such information, or if the nondisclosure was harmless beyond a reasonable doubt, the lower court will be free to reinstate the prior conviction.

*Id.* at 58, 94 L. Ed. 2d at 58.

Judge Tillery's order directed the State to turn over privileged information for the court's *in camera* review in compliance with the

holding in *Ritchie*. The order stated that the trial court should "begin the examination process as quickly as possible so as not to delay the trial of this case," and further directed the State to provide to the court information concerning the non-indictment children which the State may attempt to introduce "well before trial so that the Court may have an opportunity to review it."

Judge Tillery's order was consistent with *Ritchie*, and Judge McLelland was bound by the order as affirmed by our Supreme Court. Upon defendant's several requests for *in camera* review of these materials, Judge McLelland refused to look at the materials in the box. Failure to conduct an *in camera* inspection of the files contained therein was error. Therefore, in the event of a retrial, the presiding judge shall comply with the order and review *in camera* the materials in the box according to Judge Tillery's order.

### IMPROPER LAY OPINION

[2] Defendant contends that it was error to allow into evidence opinion testimony from several lay witnesses, most of whom were parents of testifying children. Specifically, he says these witnesses gave improper lay opinion by (1) testifying about child abuse and particular behaviors resulting from that abuse, (2) testifying about the motives, intentions and opinions of the children, (3) testifying that the children were not fantasizing or making up abuse allegations, (4) testifying about others' opinions, and (5) testifying that the children knew more than they said. Much of defendant's argument focuses on the fact that many of the opinions expressed by the parents were those of non-testifying therapists. Defendant concludes that "[t]here is a reasonable likelihood that, had the parents not been allowed to give their opinions on the significance of their children's behavior, the jury would have remained unconvinced that the children had been abused by the defendant."

The State responds that the trial court did not abuse its discretion in allowing the evidence because the testimony was based on the parents' actual experience and knowledge of their own children. Moreover, the State denies that parents gave improper lay opinion, and argues that because they testified as parents, rather than non-expert professionals, there was no danger that the jury confused their testimony with that of an expert.

The "state of a person's health, the emotions he displayed on a given occasion, or other aspects of his physical appearance are

**STATE v. KELLY**

[118 N.C. App. 589 (1995)]

proper subjects for lay opinion." *State v. Jennings*, 333 N.C. 579, 607, 430 S.E.2d 188, 201, *cert. denied*, —— U.S. ——, 126 L. Ed. 2d 602 (1993). Lay opinion on the emotional state of another is permissible if rationally based on the perception of the witness and helpful to a clear understanding of the witness's testimony. *State v. Hutchens*, 110 N.C. App. 455, 429 S.E.2d 755, *disc. review denied*, 334 N.C. 437, 433 S.E.2d 181 (1993). When a lay witness testifies to the behavioral patterns and symptoms exhibited by a child (*i.e.*, the characteristics of a sexually abused child), however, she or he has gone outside the perception of the non-expert. *Id.*

Explanations of the symptoms and characteristics of sexually abused children are admissible only through expert testimony for the limited purpose ·of assisting the jury in understanding the behavior patterns of abused children. Furthermore, evidence of a *particular* child's symptoms, and their consistency with established characteristics of abused children, can come in only through an expert. *Id.*; *see also State v. Hall*, 330 N.C. 808, 412 S.E.2d 883 (1992).

This argument encompasses review of over one hundred specific objections, all of which we have reviewed. Many of the objections have merit. In the interest of brevity, we highlight some that appeared most troubling to this Court, and which best illustrate the nature of the errors we found.

On redirect examination, a mother was asked whether, at the time her child exhibited particular behaviors, she had knowledge of the behaviors seen in a sexually abused child. After acknowledging that she did not, the prosecutor asked whether she subsequently gained that knowledge, and why that knowledge made the behaviors she saw in her child make more sense. She testified that "from everything I was reading and learning, ah, it fit right into what [my child]— the pattern of what had been going with [my children]." Similar statements were made by other parents. Now the State claims that this testimony was not objectionable because it occurred on redirect examination in response to defense questions regarding why the parents did not think the behaviors were unusual at the time they first occurred. We disagree. While "[i]t is permissible on redirect examination to ask questions designed to clarify the witness' testimony on cross-examination, even if the resulting testimony would have been inadmissible otherwise," *State v. Felton*, 330 N.C. 619, 633, 412 S.E.2d 344, 353 (1992), we cannot approve testimony from a non-expert

where such testimony is reserved exclusively for experts. *See Hall*, 330 N.C. 808, 412 S.E.2d 883.

Another parent testified that after his child was examined by a physician who found physical evidence of abuse, he knew "without a shadow of a doubt Bob Kelly raped my daughter." "[W]hile opinion testimony may embrace an ultimate issue, the opinion *may not* be phrased using a legal term of art carrying a specific legal meaning not readily apparent to the witness." *State v. Najewicz*, 112 N.C. App. 280, 293, 436 S.E.2d 132, 140 (1993), *disc. review denied*, 335 N.C. 563, 441 S.E.2d 130 (1994) (emphasis in original). " '[R]ape' is a legal term of art." *Id.* Moreover, even an expert witness is not permitted to express his opinion that it was *defendant* who raped an alleged victim. *State v. Galloway*, 304 N.C. 485, 284 S.E.2d 509 (1981).

Another parent, when asked about night terrors versus nightmares, testified that

> I mean, nightmares is one thing, but night terrors you have to—for a child to have a night terror she's had to experience something terrible, just devastating to psychologically generate that activity. And we would never have dreamt that when we first experienced it, but now, now that we have gone through it and gone through the therapy and helped her, we do realize that it is a common occurrence with children that are sexually or physically abused.

This testimony clearly oversteps the boundaries of permissible opinion for a lay witness. *See Hall*, 330 N.C. 808, 412 S.E.2d 883; *Hutchens*, 110 N.C. App. 455, 429 S.E.2d 755.

When asked about her son's memory regarding the day care, another mother surmised that he "has repressed . . . a lot of what *must* have happened." She added that "[h]e has disclosed as much as, I think, he's capable of doing in handling it. He has pushed it away and has actually forgotten things because it was so traumatic. And those have been his coping skills." Again, this is illustrative of a non-expert testifying to matters reserved for expert testimony. Moreover, this statement was not even based on the parent's personal knowledge and was nothing more than speculation. *See* N.C. Gen. Stat. § 8C-1, Rule 602 (1988).

While we call attention here to the admission into evidence of improper opinions, we in no way minimize the importance of parental observations and perceptions in this type of case. Nor do we in any

.way limit or restrict admission of such testimony. For example, testimony that a child seemed embarrassed, frightened or displayed other emotions is indeed appropriate. Similarly, testimony about statements and complaints the children made, as well as the childrens' reactions to events, are all appropriate subjects for parental testimony. Many of defendant's objections in this case fell within these constraints and were properly overruled by the trial court.

### CHRIS BEAN TESTIMONY

[3] Defendant, according to the State, failed to preserve the following issue for review. However, the State did not present this argument in its brief, but raised it for the first time in a Memorandum of Additional Authorities. Pursuant to Rule 28

> [a]dditional authorities discovered by a party after filing his brief may be brought to the attention of the court by filing a memorandum thereof with the clerk of the court and serving copies upon all other parties. *The memorandum may not be used* as a reply brief or *for additional argument,* but shall simply state the issue to which the additional authority applies and provide a full citation of the authority.

N.C.R. App. P. 28(g) (1995) (emphasis added). The State did not raise its preservation argument in a timely manner.

In January of 1989, defendant hired Chris Bean to act as his attorney in this matter. Bean remained his attorney until April of 1989 when he learned that his son had been named as a potential victim of sexual abuse. Bean formally withdrew as counsel in June of 1989. During the period of representation, Bean met with the district attorney and investigating officer and performed other services for defendant. Upon withdrawal, he became a vocal proponent for the prosecuting witnesses. Prior to trial, defendant moved to prohibit Bean and his wife from testifying for the prosecution, or, at a minimum, to prohibit reference to the attorney-client relationship. The trial court denied the motion. Defendant renewed his motion during Grace Bean's testimony and before Chris Bean's testimony.

Defendant contends that attorney Bean "participated in the prosecution of a former client" to his detriment. We disagree. Bean did not participate in the prosecution as that phrase is used in *State v. Reid,* 334 N.C. 551, 434 S.E.2d 193 (1993), and *United States v. Schell,* 775 F.2d 559 (4th Cir. 1985), *cert. denied,* 475 U.S. 1098, 89 L. Ed. 2d 898 (1986), cited by defendant. Both *Reid* and *Schell* dealt with former

defense attorneys who became members of the prosecutor's staff, a situation not presented in this case.

Nonetheless, defendant's motion should have been granted, at least in part. While an order preventing the Beans from testifying *in toto* would have been overly broad, since the Beans, as parents, could corroborate their child's testimony, the trial court erred in allowing reference to the attorney-client relationship and its effect on the Beans. This error becomes apparent upon review of that part of Mr. Bean's testimony that refers to the attorney-client relationship.

Chris Bean testified at trial as follows:

I had believed adamantly and completely in Bob Kelly's innocence. And for all of those months, ah, from January through that day had believed in his total innocence. And for me, I've never been so shattered, I don't think, in my life as I was on that Saturday, that to face the possibility that the allegations—whatever they were because we still didn't know the specific allegations—could be true. It's the first time that I had admitted to myself that it might be true. And then to think that my own child had been abused. I didn't know whether he had been. I—I selfishly prayed that he hadn't been, but thought some of the others had been. But I thought maybe he has escaped it. And I know Grace and I stood in the kitchen and—and we cried.

Bean also testified to a conversation he had with his child regarding his representation of defendant. He stated, "I just told him that I had been, ah, Bob's attorney and, um, that I had believed that—that Bob was innocent and that Bob had told me he was innocent. And then when I found out about [his child], that I was no longer Bob's attorney." He testified to a similar conversation as follows:

[Child] said out of the clear blue sky after a whole year, um, he asked me whether I had been Mr. Bob's lawyer. And I then explained to him again that, ah, I had been Mr. Bob's lawyer; Mr. Bob had told me that he hadn't done anything to the children, and that *when I found out that he had* then I wasn't Mr. Bob's lawyer anymore. Um, then [child] said to me that—that Mr. Bob had been lying to me, and he asked me how I had found that out.

The State argues the relevancy of Bean's testimony lies in showing that (1) the Beans did not talk to others about the case, (2) they did not go out and investigate because of the attorney-client relationship, and (3) their child did not disclose earlier because of the

**STATE v. KELLY**

[118 N.C. App. 589 (1995)]

attorney-client relationship. Indeed, the defense theorized that the children did not disclose until after being subjected to improper therapy sessions. Chris Bean testified, however, that his child did not learn he represented defendant until *after* the child had entered therapy. Given the defense of community hysteria, the State argued that it was critical to show that parents, like the Beans, were thoughtful, educated and reasonable people.

Testimony relating to representation was, if at all, minimally relevant and of scant probative value. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." N.C. Gen. Stat. § 8C-1, Rule 403 (1992). Rule 403 requires balancing the proffered evidence's probative value against its prejudicial effect. *State v. Mercer*, 317 N.C. 87, 343 S.E.2d 885 (1986). The question is one of degree. *Id.* In this case, the minimal probative value of the evidence is clearly outweighed by its prejudicial impact. It should have been excluded. Moreover, highly prejudicial statements like "I've never been so shattered" and "I *had* believed in his total innocence" have no probative value whatsoever. It was error to allow such testimony.

It is untenable to assert that this error did not prejudice defendant. The prejudice inherent in having your former attorney, once your champion and defender, announce his knowledge of your guilt to the jury is blatantly obvious. In this case, Bean's testimony about his representation of defendant was unnecessary and added nothing to the State's case.

Defendant presents additional assignments of error that may or may not arise in the event this case is retried. In light of our determination that prejudicial error was committed necessitating a new trial, we do not deem it necessary to address those arguments.

New trial.

Judges JOHNSON and JOHN concur.