STATE OF NORTH CAROLINA v. KATHRYN DAWN WILSON

No. 931SC1277

(Filed 2 May 1995)

**1. Constitutional Law § 248 (NCI4th)— sexual abuse case— State's withholding of favorable evidence—no error**

There was no merit to defendant's contention that the State violated *Brady v. Maryland*, 373 U.S. 83, by withholding favorable evidence in its possession, since defendant was not entitled to such information in the State's possession until trial, and after jury selection the State complied by providing the defense with notes in its possession on all children who testified at trial; furthermore, defendant could have requested an in camera inspection of the specific documents by the trial court in order for the court to determine its relevance to the defense. The trial court did violate defendant's due process rights, however, in failing to conduct a review of the privileged materials brought forth for in cam-

era review pursuant to a judge's pretrial order applicable to all defendants in the case.

**Am Jur 2d, Criminal Law § 774.**

**2. Evidence and Witnesses § 3052 (NCI4th)— sexual abuse case—defendant's drug use—cross-examination error**

In a prosecution of defendant for sexual abuse of children in the day care center in which she worked, the trial court erred in allowing the prosecutor to cross-examine her regarding her drug knowledge and use, since this evidence was irrelevant and inadmissible under Rule 608(b) of the Rules of Evidence.

**Am Jur 2d, Witnesses §§ 591-595.**

**Right to impeach witness in criminal case by inquiry or ·evidence as to witness' criminal activity not having resulted in arrest or charge—modern state cases. 24 ALR4th 333.**

**3. Criminal Law § 462 (NCI4th)— closing argument by prosecutor—reference to collateral matter—grossly improper argument**

The State made grossly improper arguments during its closing jury argument where, under the guise of explaining the law on collateral matters, the prosecution accomplished during its closing argument precisely what it could not during the trial, which was to contradict the defendant's answer that she had not stolen money, and the trial court erred in not intervening *ex mero motu.*

**Am Jur 2d, Criminal Law § 917.**

Appeal by defendant from judgment entered 26 January 1993 by Judge D. Marsh McLelland in Pasquotank County Superior Court. Heard in the Court of Appeals 9 January 1995.

Robert and Betsy Kelly hired defendant in 1988 to serve as a cook for their day care center. In addition to cooking, defendant filled in for teachers and looked after children who were dropped off after school. Defendant's arrest for sexual abuse followed the investigation into allegations made against Robert Kelly.

Defendant was originally charged with twenty-five crimes ranging from first degree sexual offense to conspiracy to commit indecent liberties with a child. Four children testified against defendant. Based

on this testimony, the trial judge submitted one charge of first degree sexual offense and four charges of taking indecent liberties with children. The jury found defendant guilty of all five charges, and the trial judge sentenced her to life imprisonment. Defendant appeals.

*Attorney General Michael F. Easley, by Special Deputy Attorney General William P. Hart, for the State.*

*J. Kirk Osborn for defendant appellant.*

ARNOLD, Chief Judge.

PRETRIAL DISCOVERY

[1] Defendant assigns as error that material information was unconstitutionally withheld that would have been of material benefit to her defense. She incorporates by reference a similar, but more fully developed argument made in the defendant's brief to this Court in *State v. Kelly,* 118 N.C. App. 589, 456 S.E.2d 861 (1995). N.C.R. App. P. 28(f) (1995). Generally, defendant contends that the United States Supreme Court's holdings in *Brady v. Maryland,* 373 U.S. 83, 10 L. Ed. 2d 215 (1963) and *Pennsylvania v. Ritchie,* 480 U.S. 39, 94 L. Ed. 2d 40 (1987) were violated. Our decision in *Kelly* is determinative of the outcome of this issue, and we refer to that decision for a more complete analysis. Additionally, we note that defendant's pretrial motions relevant to this discussion were adopted by the trial court in the instant case.

Defendant argues that the State violated *Brady* by withholding favorable evidence in its possession. We disagree. Defendant filed a Motion for Disclosure of Impeaching Information (*Brady* motion), alleging that based upon the evidence presented at Robert Kelly's trial there existed information within the State's possession that was exculpatory to defendant and to which defendant was entitled before trial. She offered in support of her motion Robert Kelly's defense counsel, Michael Spivey's affidavit, in which he stated that there was exculpatory material pertaining to Dawn Wilson in the information he received on the twelve children who testified against Kelly.

The trial court properly denied defendant's motion. Although her counsel was in a different position than counsel in *Kelly,* since he was specifically aware of potentially exculpatory testimony by indictment children and their parents, under our discovery statutes, and *Brady,* defendant was not entitled to such information in the State's possession until trial. N.C. Gen. Stat. § 15A-903 (1988); *United States v.*

*Agurs*, 427 U.S. 97, 49 L. Ed. 2d 342 (1976); *State v. Soyars*, 332 N.C. 47, 418 S.E.2d 480 (1992). After jury selection the State complied by providing the defense with notes in its possession on all children who testified at trial. Furthermore, if defendant was aware of specific non-privileged documents in the State's possession, she could have requested an *in camera* inspection of the specific document(s) by the trial court in order for the court to determine its relevance to the defense. *State v. Hardy*, 293 N.C. 105, 235 S.E.2d 828 (1977). Defendant's knowledge of specific documents is certainly conceivable because she had access to transcripts from Robert Kelly's trial that may have disclosed the existence of specific documents relevant to her own defense.

We agree with defendant, however, that she was denied her right to due process under the Federal Constitution when the trial court failed to conduct a review of the privileged materials brought forth for *in camera Ritchie* review pursuant to Judge Tillery's pretrial order applicable to all defendants. We take judicial notice of materials referred to in *Kelly* for purposes of the present appeal. *See Barker v. Agee*, 93 N.C. App. 537, 378 S.E.2d 566 (1989), *aff'd in part, rev'd in part*, 326 N.C. 470, 389 S.E.2d 803 (1990) (holding that the appellate court may take judicial notice of its own records in related proceedings). Therefore, in the event of a retrial, the presiding judge shall review *in camera* the materials at issue pursuant to Judge Tillery's order as affirmed by our Supreme Court.

## CROSS-EXAMINATION ABOUT DRUG USE

[2] Defendant contends the trial court erred in allowing the prosecutor to cross-examine her regarding her drug knowledge and use. Citing *State v. Morgan*, 315 N.C. 626, 340 S.E.2d 84 (1986), and *State v. Rowland*, 89 N.C. App. 372, 366 S.E.2d 550 (1988), she argues that her previous drug use is irrelevant under Rule 608(b) of our Rules of Evidence, and that its admission entitles her to a new trial.

Rule 608(b) evidence is admissible in the narrow instance where

(1) the *purpose* of producing the evidence is to impeach or enhance credibility by proving that the witness' conduct indicates his character for truthfulness or untruthfulness; and (2) the conduct in question *is in fact probative* of truthfulness or untruthfulness and is not too remote in time; and (3) the conduct in question did *not result in a conviction*; and (4) the inquiry into the conduct *takes place during cross-examination*.

*Morgan*, 315 N.C. at 634, 340 S.E.2d at 89-90 (emphasis in original). When determining admissibility "[t]he focus . . . is upon whether the conduct sought to be inquired into is of the type which is indicative of the actor's character for truthfulness or untruthfulness." *Id.* at 634-635, 340 S.E.2d at 90. Consequently, drug use is generally considered irrelevant. *Morgan*, 315 N.C. 626, 340 S.E.2d 84; *see also Rowland*, 89 N.C. App. 372, 366 S.E.2d 550 (stating that, standing alone, evidence of drug addiction is not probative of truthfulness or untruthfulness); *State v. Clark*, 324 N.C. 146, 167, 377 S.E.2d 54, 67 (1989) (holding that question during cross-examination about defendant's use of marijuana "had no conceivable tendency to prove or disprove her truthfulness").

Here, the prosecutor questioned defendant about her prior use of cocaine and marijuana. This evidence was irrelevant and inadmissible under Rule 608(b). The State contends, however, that even if irrelevant under Rule 608(b), the evidence is admissible under Rule 611(b) because it bears on defendant's ability to observe, retain and describe details of events. The State cites *State v. Williams*, 330 N.C. 711, 412 S.E.2d 359 (1992), in support of this argument. *Williams* held that "[w]hile specific instances of drug use or mental instability are not directly probative of truthfulness, they may bear upon credibility in other ways, such as to 'cast doubt upon the capacity of a witness to observe, recollect, and recount.' " *Williams*, 330 N.C. at 719, 412 S.E.2d at 364 (quoting 3 David Louisell & Christopher B. Mueller, *Federal Evidence* § 305, at 326 (1979)).

*Williams* is distinguishable from the present case. In discussing time lapse between use of the drug and the relevant events, the *Williams* Court noted that "nearly all [jurisdictions] impose . . . some form of restraint on the use of evidence that a witness has suffered or suffers from mental illness or addiction or alcoholism. The most common restraint or limiting factor is that *the witness must be a crucial witness for the prosecution." Id.* at 723, 412 S.E.2d at 366. The Court noted that all North Carolina cases addressing admissibility of this type of evidence under Rule 611(b) involved the cross-examination of a key State witness. *Id.* That situation does not exist here, and we see no compelling reason to extend *Williams'* rationale to this case.

"A defendant is prejudiced by errors . . . when there is a reasonable possibility that, had the error . . . not been committed, a different result would have been reached at the trial out of which the appeal arises." N.C. Gen. Stat. § 15A-1443(a) (1988). The State contends

defendant suffered no prejudice "in view of the defendant's admissions" to prior acts of misconduct, about which she was cross-examined extensively. We disagree. At trial, defendant admitted forging a check after stealing a co-worker's purse, but denied another theft.

When a case turns on the credibility of the witnesses it is difficult to hold such an admission harmless. *Rowland*, 89 N.C. App. 372, 366 S.E.2d 550 (finding prejudicial error where evidence of drug addiction erroneously admitted and case turned on whether jury believed defendant or alleged victim). Here, the State's case consisted primarily of the testimony of young children, accompanied by corroborating testimony from their parents. All of the children testified to events occurring approximately three years before trial when they were only three or four years old. Other than the children there were no witnesses to the alleged abuse, and scant physical evidence supported the charges against this defendant. Defendant testified on her own behalf and denied all of the allegations. Her credibility was critical to her defense and, as in *Rowland*, "[w]e cannot say that there is no 'reasonable possibility that, had this error . . . not been committed,' the jury would have reached a different verdict." *Rowland*, 89 N.C. App. at 383, 366 S.E.2d at 556 (quoting N.C. Gen. Stat. § 15A-1443(a) (1988)).

## GROSS IMPROPRIETIES IN CLOSING ARGUMENT

[3] Finally, we address defendant's assertion that the State made grossly improper arguments during its closing jury argument. Defendant, however, failed to object to any of the arguments she now says were so improper. "[T]herefore, [she] may now only assert that the trial judge should have corrected the argument *ex mero motu*." *State v. Craig*, 308 N.C. 446, 454, 302 S.E.2d 740, 745, *cert. denied*, 464 U.S. 908, 78 L. Ed. 2d 247 (1983). The standard on review is that of gross impropriety, *id.*, and "the impropriety . . . must be gross indeed in order for this Court to hold that a trial judge abused his discretion in not recognizing and correcting *ex mero motu* an argument which defense counsel did not believe was prejudicial when he heard it." *State v. Johnson*, 298 N.C. 355, 369, 259 S.E.2d 752, 761 (1979).

Defendant first contends that the prosecutor erred when he referred to the following collateral matter during his closing argument:

One of the things that you need to know, ladies and gentlemen, as I've told you about other evidence, we're bound by the rules of

law and we cannot put on just any kind of evidence we want to. One of the things that we can't do is impeach a witness on a collateral matter.

Now, a collateral matter is something that's not relevant, something that's not probative of the issues in this case. An example . . . . That's a collateral matter, not an issue in this case. So I couldn't have called Francis Layden as a witness and said yes, these things are true. Also could not call Captain Bonner and Kelly Jones Weber, the people that I had sitting in the courtroom that one day when I was asking Dawn about her thefts. I knew that I could not call them to rebut what she said because that was a collateral matter. I was bound by her answers but I didn't think she would know that. So I had them here so she would be confronted with them and realize that they were here and that they were ready to testify if she didn't tell the truth. But I could not put those people on the witness stand to say to the contrary because we were bound by that, I was bound by her answers.

This was a grossly improper argument. Under the guise of explaining the law on collateral matters, the prosecution accomplished during its closing argument precisely what it could not during the trial. As the State is more than well aware, " 'answers made by a witness to collateral questions on cross-examination are conclusive,' " and extrinsic evidence is not admissible to contradict the witness' answer. *State v. Robinette*, 39 N.C. App. 622, 625, 251 S.E.2d 635, 637 (1979) (quoting *State v. Long*, 280 N.C. 633, 639, 187 S.E.2d 47, 50 (1972); *see also State v. Shane*, 304 N.C. 643, 285 S.E.2d 813 (1982), *cert. denied*, 465 U.S. 1104, 80 L. Ed. 2d 134 (1984).

During a very lengthy cross-examination concerning this incident, defendant specifically denied stealing from Kelly Jones Weber. Weber had been a passenger in defendant's car, and defendant maintained that she discovered Weber's money on the floor in the back seat afterwards. The prosecutor was bound by this answer and could not call Weber or Captain Bonner, the investigating officer, to the stand to contradict her. In his closing argument, however, he did just that when he labeled the incident a theft and told the jury that Weber and Captain Bonner were present in the courtroom to assure that defendant told the truth.

"[I]t [is] improper for the State to argue [a] previously denied allegation as a proven fact." *State v. Jolly*, 332 N.C. 351, 368, 420 S.E.2d 661, 671 (1992). Moreover, we strongly disapprove of this flagrant vio-

**STATE v. WILSON**

[118 N.C. App. 616 (1995)]

lation of our rules of evidence and misuse of closing argument. "[C]ounsel may not, by argument or cross-examination, place before the jury incompetent and prejudicial matters by injecting his own knowledge, beliefs, and personal opinions not supported by the evidence." *State v. Britt*, 288 N.C. 699, 711, 220 S.E.2d 283, 291 (1975). We are unconvinced by the State's proposition that defendant invited the prosecutor's remarks by arguing that the State did not want the jury to see the whole picture. That argument does not relate to this specific incident. *But see State v. Stegmann*, 286 N.C. 638, 213 S.E.2d 262 (1975), *vacated in part*, 428 U.S. 902, 49 L. Ed. 2d 1205 (1976) (stating that counsel's repeated arguments that no evidence showed defendant was arrested for rape in 1971 invited prosecutor's argument that he could not introduce independent evidence of a collateral matter). We believe that the trial court erred in not intervening *ex mero motu*.

Defendant also argues that the prosecutor erred by commenting that defendant opened the door to the introduction of therapists' notes to "rub in" an alleged defense mistake. She further contends the prosecutor erred by telling the jury they could take the notes into the jury room unless defendant objected. Because we have determined above that a portion of the prosecutor's argument constituted prejudicial error, it is unnecessary to consider whether these and defendant's two remaining contentions under this issue merited *ex mero motu* intervention. Nonetheless, we take this occasion expressly to disapprove of the foregoing arguments by the prosecutor in that they mislead, misstate the law, and are calculated to demean defense counsel.

Defendant presents additional assignments of error which may or may not arise in the event of retrial, and in light of our determination that prejudicial error was committed entitling defendant to a new trial, we do not deem it necessary to address those arguments.

New trial.

Judges JOHNSON and JOHN concur.