STATE OF NORTH CAROLINA v. ARTIS TAMAR PERKINS

No. COA02-158

(Filed 19 November 2002)

**1. Appeal and Error— preservation of issues—general objection**

A defendant in a prosecution for a first-degree murder (which began when a baby was called ugly) did not preserve for appellate review the State's cross-examination of defendant about bad acts and crimes he committed as a juvenile. Defendant made only two general objections, gave no basis for the objections, and the transcript does not clearly demonstrate grounds for the objections.

**2. Evidence— bad acts as juvenile—admission not plain error**

The admission of bad acts and crimes committed by a first-degree murder defendant as a juvenile was not plain error where there was compelling evidence of guilt, defendant did not show that the jury probably would have reached a different result otherwise, and defendant did not show that the admission of the evidence resulted in a fundamental miscarriage of justice.

**3. Evidence— bad acts as juvenile—not statutory plain error**

The General Assembly did not label the admission of juvenile convictions as plain error in N.C.G.S. § 8C-1, Rule 609(d), under which a defendant cannot be impeached by a juvenile adjudication, and there was no evidence that defendant was unfairly prejudiced by questions about his juvenile convictions.

Appeal by defendant from judgment dated 20 April 2001 by Judge David Q. LaBarre in Superior Court, Wake County. Heard in the Court of Appeals 16 October 2002.

*Attorney General Roy Cooper, by Assistant Attorney General Steven F. Bryant, for the State.*

*Ligon and Hinton, by Lemuel W. Hinton, for defendant-appellant.*

McGEE, Judge.

Artis Tamar Perkins (defendant) was indicted for the murder of Louis Santos on 23 October 2000. The evidence presented at trial tended to show the following. Tiyonia Miller (Miller) was walking to defendant's apartment in Raleigh, North Carolina with her baby in her arms on 16 September 2000. As she walked up the steps of the apartment, Louis Santos (Santos) and Antwoin Watkins (Watkins) complimented Miller on her baby. Lushawna Jeffreys (Lushawna) was standing on the balcony above and said that the baby was ugly. Miller entered defendant's apartment and told those in the apartment, including Shaquanna Henderson (Shaquanna) and Kenyatta Henderson (Kenyatta), what Lushawna had said.

Lushawna left her apartment and Miller went outside to confront her. They were soon joined by Shaquanna, Kenyatta, and others, including Latisha Jeffreys (Latisha), and an argument ensued. Latisha punched Shaquanna in the jaw and a fight started. Santos and Watkins broke up the fight by pushing Lushawna and Latisha back into the apartment. Santos had called for a taxi and it arrived. Santos, Watkins, Lushawna, and Latisha left the apartment. Shaquanna, Kenyatta, and Miller stood outside their apartment and Santos and Watkins stayed between the young women to prevent another fight.

As Santos, Watkins, Lushawna, and Latisha entered the taxi, Kenyatta and Miller threw bottles at the vehicle. The taxi driver refused to drive the four passengers away from the scene and ordered

them out of the taxi. After leaving the taxi, Lushawna and Latisha went to a neighbor's house to call another taxi while Santos and Watkins waited outside. When Lushawna and Latisha returned, they were confronted by Shaquanna, Kenyatta, and another female, and another fight erupted.

A crowd gathered and some people encouraged the young women to fight. Santos and Watkins attempted to break up the fight by pushing the young women apart. Defendant and his friend, Maurice Davis (Davis), were in the crowd watching the fight. Davis heard defendant say that Santos and Watkins were hitting defendant's sister. A couple of weeks earlier, Davis had given defendant a gun. Davis asked defendant if he had the gun and defendant responded that he did. When Davis asked defendant what he was going to do, defendant stated that he was going to "shoot . . . a m---- f---- that keep messing with my sister."

During the fight, the young women and Santos fell to the ground, with Santos on top of Kenyatta. Santos was hitting Kenyatta's head against the ground. Defendant removed a gun from his back pocket and began to shoot it. Defendant fired the gun, paused, and then fired several more shots. After the shots, Santos ran from the crowd and said, "I'm shot, I'm shot" before falling to the ground. Santos was shot once in his back and twice in his left leg. Bystanders administered CPR until emergency medical personnel and police arrived. Santos died from the gunshot wound in his back.

At trial, the trial court determined that due to defendant's age at the time of the crime, his case would be tried as a noncapital case. The jury found defendant guilty of first degree murder and the trial court sentenced defendant to life imprisonment without parole. Defendant appeals.

[1] Defendant's sole argument on appeal is that the trial court erred in allowing the State to question defendant about crimes and bad acts he committed as a juvenile. Defendant argues the State impermissibly attacked his character with evidence of prior unindicted bad acts. The trial transcript shows the following cross-examination of defendant by the State:

Q. Did you used to stand out with Quondell while he was selling drugs?

DEFENSE COUNSEL: Objection, your Honor.

COURT: Overruled.

STATE v. PERKINS

[154 N.C. App. 148 (2002)]

Q. Did you used to stand out with Quondell over at Cinnamon Ridge while he was selling drugs?

A. Sometimes.

Q. You sell drugs too?

A. I have.

Q. Did you sell drugs also over by Muffin's house?

A. No, I did not.

Q. Over in southeast Raleigh anywhere?

A. No, I didn't.

Q. Who else would sell drugs out there with you at Cinnamon Ridge, Maurice?

A. No one sold drugs with me. They did it on their own.

Q. So you just sold drugs on your own, you didn't sell for anybody?

A. No, I didn't.

Q. Where did you get them from?

A. Does it really matter?

Q. Where did you get them from?

A. I got it from a guy.

DEFENSE COUNSEL: Objection, your Honor.

COURT: Overruled.

A. I got it from a guy.

Q. Who?

A. I don't know.

"In order to preserve a question for appellate review, a party must have presented the trial court with a timely request, objection or motion, stating the specific grounds for the ruling sought if the specific grounds are not apparent." *State v. Eason*, 328 N.C. 409, 420, 402 S.E.2d 809, 814 (1991); *see* N.C. R. App. P. 10(b)(1). The trial transcript shows that counsel for defendant only made two general objections to questions regarding defendant's drug sales during the challenged

cross-examination and failed to object to the State's repeated questions concerning defendant's bad acts. Defendant's counsel also failed to state specific grounds for the basis of the objections. "A general objection, when overruled, is ordinarily not adequate unless the evidence, considered as a whole, makes it clear that there is no purpose to be served from admitting the evidence." *State v. Jones*, 342 N.C. 523, 535, 467 S.E.2d 12, 20 (1996). Defendant's counsel gave no basis for the objections and the transcript does not clearly demonstrate grounds for the objections. Accordingly, defendant failed to properly preserve this issue for appeal. *See State v. Gardner*, 315 N.C. 444, 447, 340 S.E.2d 701, 704 (1986).

**[2]** Defendant nonetheless argues the admission of evidence of his prior bad acts constituted plain error and should be reviewed by this Court accordingly. *See* N.C. R. App. P. 10(c)(4). Plain error review is appropriate when a defendant fails to preserve the issue for appeal by properly objecting to the admission of evidence at trial. *State v. Rourke*, 143 N.C. App. 672, 675, 548 S.E.2d 188, 190 (2001).

> Plain error is an error which was "so fundamental as to amount to a miscarriage of justice or which probably resulted in the jury reaching a different verdict than it otherwise would have reached." *State v. Bagley*, 321 N.C. 201, 213, 362 S.E.2d 244, 251 (1987), *cert. denied*, 485 U.S. 1036, 99 L.Ed.2d 912 (1988). To prevail under a plain error analysis, a defendant must establish not only that the trial court committed error, but that absent the error, the jury probably would have reached a different result. *See State v. Jordan*, 333 N.C. 431, 440, 426 S.E.2d 692, 697 (1993).

*State v. Jones*, 137 N.C. App. 221, 226, 527 S.E.2d 700, 704 (2000). Our Supreme Court has stated that

> "[t]he plain error rule . . . is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a 'fundamental error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done,' or 'where [the error] is grave error which amounts to a denial of a fundamental right of the accused,' or the error has ' "resulted in a miscarriage of justice or in the denial to appellant of a fair trial." ' "

*State v. Steen*, 352 N.C. 227, 255, 536 S.E.2d 1, 18 (2000) (quoting *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (quoting

*United States v. McCaskill*, 676 F.2d 995, 1002 (4th Cir.), *cert. denied*, 459 U.S. 1018, 74 L. Ed. 2d 513 (1982) (emphasis omitted))).

Defendant argues that admitting evidence of defendant's prior bad acts as a juvenile was overly prejudicial and rose to the level of plain error. Defendant further argues that his defense relied largely upon his credibility, which was effectively destroyed by admission of the prior bad acts. Defendant also argues that he is entitled to a new trial under *State v. Wilson*, 118 N.C. App. 616, 456 S.E.2d 870 (1995). In holding that the defendant in *Wilson* was prejudiced by the admission of improper evidence, this Court stated that " '[a] defendant is prejudiced by errors . . . when there is a reasonable possibility that, had the error . . . not been committed, a different result would have been reached at the trial out of which the appeal arises.' " *Id.* at 620, 456 S.E.2d at 873 (quoting N.C. Gen. Stat. § 15A-1443(a) (1988)). While defendant states this standard correctly, we must review defendant's argument for plain error rather than under this standard because defendant failed to properly preserve the issue for appeal.

Defendant also argues that the General Assembly has sought to protect juvenile defendants when they are tried as adults. Defendant cites N.C. Gen. Stat. § 8C-1, Rule 609(d) and argues that public policy requires an extension of the criminal convictions exclusion to include prior bad acts under Rule 608. However, defendant offers no authority that suggests the General Assembly intended such a result and we find no argument that would justify such an extension.

Defendant fails to show that the jury probably would have reached a different result had the evidence of prior bad acts not been admitted. He also fails to demonstrate that the admission of the evidence resulted in a fundamental miscarriage of justice. In light of the compelling evidence of defendant's guilt presented at trial, we hold the trial court did not commit plain error in admitting evidence of defendant's prior bad acts. *See State v. Parks*, 148 N.C. App. 600, 609, 560 S.E.2d 179, 185 (2002).

[3] Defendant also contends the State impermissibly attacked his credibility through the use of prior juvenile convictions. The trial transcript shows the following cross-examination of defendant by the State:

Q. Did your mother teach you right from wrong?

A. Yes, she did.

Q. Did she tell you it was wrong to shoot people?

A. Yes, she did.

Q. Did she tell you it was wrong to steal?

A. Yes.

Q. Did she tell you it was wrong to fight people or hurt them?

A. She told me not to do it unless like I'm protect[ing] myself.

Q. Did she tell you it was wrong to lie?

A. Yes, she did.

Q. But you do all those things, don't you?

A. No, I don't.

Q. You don't steal?

A. I have—I don't do it anymore.

Q. You're on probation for that, aren't you?

A. Not on probation anymore.

Q. Because you got arrested for murder?

A. Yes.

Q. You've gotten in fights before too, haven't you?

A. Yes, I have.

Q. You've been convicted of being in fights too, haven't you?

DEFENSE COUNSEL: Objection, your Honor.

A. No.

COURT: Overruled.

Q. Have you not been convicted of assault?

A. No.

Q. You weren't put on probation for assault?

A. No.

Q. On [10 February] 2000, you weren't placed on probation for assault?

A. I was placed on probation for stealing.

Q. And after you got placed on probation for stealing, you were also convicted of assault, weren't you?

A. No, I wasn't.

Q. You didn't get an assault and have them have to extend your probation for stealing because you got in trouble again?

A. No.

As discussed previously, an objection to evidence must be timely and specific in order to preserve the issue for appeal. *Eason*, 328 N.C. at 420, 402 S.E.2d at 814; *see* N.C. R. App. P. 10(b)(1). The trial transcript shows that defendant made only one general objection to the State's questions regarding prior juvenile convictions. The objection came after defendant answered the question concerning his conviction for assault and provided no grounds for the ruling sought. Defendant did not object to testimony regarding a prior juvenile conviction for stealing or to the four successive questions concerning defendant's alleged probation for assault after the initial objection. This issue was therefore not properly preserved for appeal.

Defendant argues the admission of prior juvenile convictions was plain error and urges this Court to review the issue accordingly. As we have previously discussed, the burden on defendant to demonstrate plain error is high. "To prevail under a plain error analysis, a defendant must establish not only that the trial court committed error, but that absent the error, the jury probably would have reached a different result." *Jones*, 137 N.C. App. at 226, 527 S.E.2d at 704.

Defendant argues the General Assembly labeled the admission of juvenile convictions as plain error by enacting N.C. Gen. Stat. § 8C-1, Rule 609(d) (2001). Under Rule 609(d), a defendant cannot be impeached by a juvenile adjudication in a criminal case. *Id.* While admission of defendant's juvenile conviction for stealing and questions concerning an assault conviction were inappropriate, the General Assembly's decision to exclude such testimony does not mean its admission is plain error. Defendant has cited no authority that would compel such an interpretation of the North Carolina Rules of Evidence.

While defendant objected once to the admission of his prior juvenile conviction for assault, there is no evidence that he was unfairly prejudiced by the question. Defendant responded "no" to the first

question before an objection was given and no extrinsic evidence of the juvenile adjudication was admitted into evidence. No evidence therefore was admitted concerning a juvenile conviction for assault that could have prejudiced defendant.

Defendant has failed to show that exclusion of evidence of his prior juvenile convictions probably would have resulted in a different outcome at trial. He has also failed to demonstrate that admission of the evidence resulted in a fundamental miscarriage of justice. The evidence presented at trial was sufficient for the jury to convict defendant absent the admission of the evidence in question. In light of the compelling evidence of defendant's guilt, we hold the admission of prior juvenile convictions did not constitute plain error. We find this assignment of error to be without merit.

We hold that defendant received a fair trial, free of prejudicial error.

No error.

Judges HUDSON and BIGGS concur.